**STATE of Missouri, Respondent,**

v.

**Jesse SCOTT, Appellant.**

**No. 35122.**

Missouri Court of Appeals, St. Louis District, Division 2.

April 2, 1974.

John C. Danforth, Atty. Gen., G. Michael O'Neal, William F. Arnet, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., James A. Roche, Jr., Asst. Circuit Atty., St. Louis, for respondent.

Charles D. Kitchin, Public Defender, Terry B. Crouppen, James C. Jones, John H. Marshall, Asst. Public Defenders, St. Louis, for appellant.

CLEMENS, Acting Presiding Judge.

On the second trial for the same homicide, defendant was convicted in a jury trial of second-degree murder. Judgment was entered and punishment assessed at 42 years' imprisonment. Defendant's motion for new trial was overruled and he appeals.

Sufficiency of the evidence is not in issue and a statement of the facts can be brief. On the evening of March 31, 1969 Mrs. Iris Evans, prompted by a persistent bumping sound, went downstairs to the apartment below and discovered a tenant lying in the hall. The police were summoned and found Charlie Thomas severely injured. The apartment was in disarray and it appeared a struggle had occurred. The victim was visited in City Hospital by his son, Darris Thomas. When Darris asked his father, "Who did this to you?" the victim replied, "Clydell's brother, Jesse"—referring to the defendant, Jesse Scott. Charlie Thomas died the next day.

Detective Herbert Riley of the St. Louis Police Department arrested the defendant on November 17, 1969 in Chicago and returned him to St. Louis. After being advised of his rights, defendant made an oral statement concerning his role in the crime. Riley took notes and later referred to them in preparing his police report. At both trials he testified as to the defendant's oral statement. The main point of the statement is that the defendant was approached by another man and persuaded to take part in robbing Charlie Thomas, a relative of defendant; the other man entered the house after convincing Thomas he was Jesse Scott, a relative; the other man later contacted defendant and told him Thomas had struggled with him, he had stabbed Thomas and had probably killed him; defendant tried to call the police but could contact no one; finally, he went to a funeral in Chicago and decided to stay.

Defendant was convicted of first-degree murder in the first trial in May of 1970, but the Supreme Court of Missouri reversed the conviction. The prosecution in the 1970 trial had refused to provide defendant's counsel with copies of Detective Riley's notes of the defendant's oral statement or copies of the police report prepared from those notes. The Supreme Court held ". . . [the] trial was rendered 'fundamentally unfair' (State v. Aubuchon, Mo.Sup., 381 S.W.2d 807, 814) when appellant was refused inspection of the substance of oral statements made by appellant to Detective Riley. We find an abuse of discretion and prejudicial error." State v. Scott, 479 S.W.2d 438 (Mo.Banc 1972).

**304**

Upon retrial the prosecution gave defense counsel copies of the police report and the transcript from the first trial showing Detective Riley's testimony concerning defendant's oral statement but the original notes written by Detective Riley had been lost and a diligent search was fruitless.

The issue now is whether the trial court erred at the second trial by permitting Detective Riley to testify when the notes written by him when taking defendant's oral statement were not provided to the defense. Defendant argues that the "substance" of Detective Riley's statement was the "notes" which, under the rule of *Scott*, must be provided to the defendant for his inspection and because they were lost and Detective Riley's testimony was subsequently admitted at trial, the conviction should be reversed. We disagree.

The "substance of oral statements" does not mean only the notes made by Detective Riley. We construe that statement in *Scott* to mean all available documents and supportive evidence for the statement made by defendant. The purpose of the material is to allow the defense to prepare properly for trial and especially for cross examination. The record here shows the prosecution provided the defense with every document it had; it denied the defense nothing and cooperated completely.

Assuming that the prosecution was willing to and did provide all available materials, the remaining question is whether the trial court abused its discretion in allowing Detective Riley to testify. Under the rule established in *Aubuchon* such decisions rest in the discretion of the trial court. Defendant contends that discretion was abused. We cannot agree. The police report contained the substance of defendant's oral statement to Detective Riley, as did Detective Riley's examination and cross examination appearing in the transcript of the first trial. The court could find a thorough search had been made for the missing notes and no ulterior motives were ascribed to the prosecution. Only after these determinations did the trial court rule Detective Riley's testimony was admissible. We find no abuse of discretion.

Judgment affirmed.

McMILLIAN and GUNN, JJ., concur.